**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

        Plaintiff,

vs.

ONE VISION F/K/A OPPORTUNITY
VILLAGE; MICHAEL W. MARR;
CHARLES MARR; and ELIZABETH
WILKINSON,

        Defendants.

No. 19-CV-3016-CJW-KEM

**MEMORANDUM OPINION**
**AND ORDER**

_____

**TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND ………………………………………………… 1

II.   PROCEDURAL HISTORY ………………………………………………… 4

III.  MOTION TO RECONSIDER ……………………………………………… 5

     A.    Applicable Law……………………………………………………… 5

     B.    Analysis……………………………………………………………… 6

          1.    Rule 60(b)(1) ………………………………………………… 6

          2.    Rule 60(b)(6) ………………………………………………… 8

IV.  MOTION FOR INTERPLEADER RELIEF……………………………….10

     A.    Applicable Law………………………………………………………10

B.    Analysis………………………………………………………………12

    1.    Jurisdiction……………………………………………………12

        a.    Competing Claims………………………………………12

        b.    Minimal Diversity ……………………………………13

        c.    Deposit ………………………………………………13

    2.    Interpleader …………………………………………………14

    3.    Relief………………………………………………………14

        a.    Discharge from Liability and Injunction…………………15

        b.    Dismissal……………………………………………16

        c.    Attorneys' Fees ………………………………………17

V.    CONCLUSION ………………………………………………………24

This matter is before the Court on defendant Charles Marr's ("Charles") motion to reconsider (Doc. 17) and plaintiff American General Life Insurance Company's motion for interpleader relief (Doc. 24). Plaintiff filed a timely resistance to Charles' motion to reconsider. (Doc. 23). None of the defendants filed a resistance to plaintiff's motion for interpleader relief. For the reasons below, Charles' motion to reconsider is **denied** and plaintiff's motion for interpleader relief is **granted in part** and **denied in part**.

## I.    *FACTUAL BACKGROUND*

The following facts are not in dispute unless otherwise noted. Additional facts will be discussed below as they become relevant. Plaintiff is the issuer of an annuity (the "Annuity") under which Katherine Marr ("Katherine") was the annuitant and measuring life. (Docs. 1, at 1; 1-2, at 8-9). Charles, Michael W. Marr ("Michael"), and Elizabeth Wilkinson ("Elizabeth") (collectively, the "Marr defendants") are Katherine's siblings. (Docs. 1-2; 1-3). Katherine and the Marr defendants' parents died in an accident which led to a settlement between Katherine, other members of her family, the personal injury defendants, and their insurers. (Docs. 1, at 2-3; 17, at 3). Plaintiff asserts that Katherine entered the settlement agreement through Michael who was acting as her trustee. (Doc. 1, at 2-3). The Annuity was purchased to fund the personal injury defendants and their insurers' obligations under the settlement agreement. (*Id.*). The Annuity guarantees payments of $611.42 per month from July 1, 2002, until June 1, 2022 (the "Annuity Payments"), and provides that the Annuity Payments would continue for the remainder of Katherine's life if Katherine survived past June 1, 2022. (Docs. 1, at 3; 1-2, at 3). Katherine passed away in September 2018. (Doc. 5, at 10).

The application for the Annuity lists Michael, as Trustee of the Katherine M. Marr Trust, as the payee of the Annuity Payments. (Docs. 1, at 3; 1-2, at 9). The portion of the application designating Michael as payee identifies "Michael W. Marr, Trustee" in typeface, but the words "of the Katherine M[.] Marr Trust" and an address are

handwritten below. (Doc. 1-2, at 9). The Marr defendants assert that the Katherine M. Marr Trust does not exist. (Doc. 5, at 9). Attorney Ron Arispe ("Mr. Arispe"), who represented the Marr defendants in litigation related to their parent's death, informed plaintiff that the Katherine M. Marr Trust was not a trust, but rather was a designation used for business purposes. (Doc. 24-3, at 23). Mr. Arispe asserted that Michael had authority to act on Katherine's behalf because Michael was the trustee of their parents' trust as well as the executor of their parents' estates. (*Id.*).

The application for the Annuity lists Opportunity Village as the beneficiary of the Annuity and the Marr defendants as the contingent beneficiaries. (*Id.*). Plaintiff asserts, and One Vision admits, that Opportunity Village is an Iowa nonprofit corporation and is now known as One Vision. (Docs. 1, at 1; 11, at 1). The Marr defendants claim that One Vision is not the same as Opportunity Village. (Docs. 5, at 9; 17, at 3). The Marr defendants' contention that One Vision is not the same as Opportunity Village is primarily based on the Marr defendants' belief that One Vision significantly changed Opportunity Village's operations. (*Id.*).

On or about July 29, 2018, Michael executed a change of beneficiary form naming himself as the primary beneficiary and Elizabeth as the contingent beneficiary of the Annuity. (Doc. 1-3). Michael signed the form on the line designated "Signature of Annuitant or Legal Representative." (*Id.*). On or about August 1, 2018, plaintiff received a copy of the change of beneficiary form. (Doc. 1, at 3). Plaintiff alleges that it requested that Michael and Mr. Arispe provide plaintiff with documentation showing that Michael was the Trustee of the Katherine M. Marr Trust or any other documentation showing that Michael had authority to change the beneficiary of the Annuity. (Docs. 1, at 3-4; 24-3, at 17, 20). On September 17, 2018, plaintiff became aware of Katherine's death. (Docs. 1, at 3; 24-3, at 16). Plaintiff communicated with Michael and Mr. Arispe on several occasions by email between August 6, 2018, and January 4, 2019. (Doc. 24-

3, at 16-28). On January 10, 2019, Mr. Arispe informed plaintiff that he did not have any additional information on this matter. (Docs. 1, at 4; 24-3, at 29).

Plaintiff took the position that the documents Mr. Arispe provided, apparently about Katherine and the Marr defendants' parents' trust, did not substantiate Michael's ability to change the beneficiary of the Annuity because the Annuity listed Michael, as Trustee of the Katherine M. Marr Trust, as the payee. (*See* Doc. 23-4, at 23, 29). Beginning with the payment due on October 1, 2018, plaintiff withheld the Annuity Payments until it could determine the proper beneficiary in light of the change of beneficiary form and the questions about Michael's authority to change the beneficiary of the Annuity. (*Id.*, at 4).

The Marr defendants assert that based on the change of beneficiary form there is no doubt that Michael and Elizabeth are the beneficiaries of the Annuity following Katherine's death. (Doc. 5, at 10). The Marr defendants contend that the Katherine M. Marr Trust never existed. (Doc. 5, at 9-10). The Marr defendants also argue that Michael had the authority to set up the Annuity on Katherine's behalf and change the beneficiary because Michael was the administrator of Katherine and the Marr defendants' parents' estates. (Docs. 5, at 9-11; 17 at 2; *see also* Doc. 24-3, at 23). Thus, the Marr defendants assert that their inability to produce documentation of the Katherine M. Marr Trust does not permit plaintiff to disregard the change of beneficiary form. (*Id.*). The Marr defendants likewise challenge the propriety of plaintiff's request for documentation related to Michael's authority to change the beneficiary of the Annuity when no such documentation was required when the Annuity initially named Michael as Trustee as the payee. (Doc. 5, at 9-11). The Marr defendants repeatedly object to plaintiff collecting attorneys' fees and costs out of the Annuity Payments. (*Id.*, at 9-12).

## II.    PROCEDURAL HISTORY

On April 23, 2019, plaintiff filed this interpleader action.  (Doc. 1).  Plaintiff sought to deposit the withheld Annuity Payments and all future Annuity Payments as they become due into the Court Registry Investment System ("CRIS").  (*Id.*, at 6).  The complaint also requested that the Court discharge plaintiff from any further liability related to the Annuity or the Annuity Payments, restrain the defendants from instituting or maintain any action regarding the Annuity or the Annuity Payments, and award plaintiff its attorneys' fees and costs associated with this action.  (*Id.*).  On April 24, 2019, plaintiff filed a motion to deposit the withheld Annuity Payments and future Annuity Payments into CRIS.  (Doc. 4).  On May 30, 2019, the Marr defendants filed a pro se answer to plaintiff's complaint.  (Doc. 5).  Construing the pro se answer broadly, it also challenged the propriety of plaintiff depositing the withheld and future Annuity Payments into CRIS.  (*Id.*).  The Court considered the arguments in the Marr defendants' answer as a resistance to plaintiff's motion to deposit funds[1] but held that it was proper for plaintiff to deposit the Annuity Payments under the circumstances.  (Doc. 12).

On June 28, 2019, One Vision filed an answer to plaintiff's complaint and asserted a cross-claim against the Marr defendants.  (Doc. 11).  One Vision alleges that it is the beneficiary of the Annuity, that Michael lacked authority to change the beneficiary of the Annuity, and that One Vision is entitled to the Annuity Payments.  (*Id.*, at 3-4).  On

---

[1] The Court notes that some courts refer to the subject of an interpleader action as the "fund," singular, while others refer to the impleaded "funds," plural.  The Court will refer to the Annuity Payments as "funds," plural, but some cases cited in this Order refer the subject of an interpleader action as a singular "fund."  This distinction has no bearing on the substance of the Court's Order.

August 26, 2019, Charles filed his answer to One Vision's cross-claim. (Doc. 17).[2] Charles' answer to the cross-claim also included a motion to reconsider the Court's Order granting plaintiff's motion for interpleader relief. (*Id.*). The Court provided the other parties fourteen days to respond to Charles' motion to reconsider. (Doc. 19). Plaintiff filed a timely resistance to the motion to reconsider. (Doc. 23). Plaintiff then moved for interpleader relief. (Doc. 24). Plaintiff's motion seeks the same relief as its complaint, other than leave to deposit the remaining Annuity Payments which the Court previously granted. (*Compare* Doc. 1, at 6 *with* Doc. 24-1, at 9-10).

After plaintiff filed its motion for interpleader relief, the Court determined that the Marr defendants were not served certain filings, including but not limited to Plaintiff's Motion for Leave to Deposit Funds into Registry of the Court. (Doc. 25). The Court ordered the Clerk of Court to mail all filings in this case to each of the Marr defendants at their last known address and ordered the Marr defendants to either confirm their current address or have counsel appear on their behalf within fourteen days of the Court's Order. (*Id.*). The Clerk of Court mailed all filings to the Marr defendants. (Docs. 25-1, 25-2). None of the Marr defendants confirmed or corrected their addresses, had counsel appear on their behalf, or resisted plaintiff's motion for interpleader relief.

### III.   MOTION TO RECONSIDER

#### A.    Applicable Law

Charles' motion to reconsider does not state under which Federal Rule of Civil Procedure he seeks relief. The Federal Rules of Civil Procedure do not provide for "motions to reconsider," but the Eighth Circuit Court of Appeals has determined that such motions are "nothing more than Rule 60(b) motions when directed at non-final

---

[2] Charles purported to file the answer on behalf of all the Marr defendants, but Charles is not a licensed attorney and thus cannot represent his siblings before the Court. The Court will treat Charles' filings as being filed only on his own behalf.

orders." *Nelson v. Am. Home Assur. Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012) (quoting *Elder–Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006)).[3] "Relief under Rule 60(b) is an extraordinary remedy that lies within the discretion of the trial court." *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004); *see also Schultz v. Commerce First Fin.*, 24 F.3d 1023, 1024 (8th Cir. 1994) ("[T]he propriety of Rule 60(b) relief is committed to the trial court's discretion . . .."). Relief under Rule 60(b) is "equitable in character and must be administered upon equitable principles." *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947).

### B. *Analysis*

#### 1. *Rule 60(b)(1)*

Under Rule 60(b)(1) the Court may relieve a party from an order due to "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Charles argues that the Court's Order allowing plaintiff to deposit the Annuity Payments into CRIS was improper because he "did not receive One Vision's Answer and Cross Claim . . . until AFTER the Court granted Prayer C." (Doc. 17, at 3). "Prayer C" in One Vision's cross-claim requests that the Court "[d]irect the Clerk of Court or the holder of any funds deposited into the registry of the Court to make payment to One Vision." (Doc. 11, at 4).

Charles' argument is premised on a mistaken understanding of the record. The Court did not permit plaintiff to deposit the Annuity Payments based on One Vision's cross-claim. The Court permitted plaintiff to deposit the Annuity Payments because the

---

[3] This Court has held that Rule 54(b) may apply to some motions to reconsider. *De Dios v. Indem. Ins. Co. of N. Am.*, No. C 18-4015-MWB, 2018 WL 3420810, at *1 (N.D. Iowa July 13, 2018). The standard for ruling on a Rule 54(b) motion is less exacting than a Rule 60(b) motion, but the Court still looks to the general principles of Rule 60(b). Thus, the Court will analyze Charles' motion using the general considerations set forth in Rule 60(b) while keeping in mind the less exacting Rule 54(b) standard.

Court granted plaintiff's motion seeking permission to do so. (Doc. 12). Plaintiff filed its motion to deposit funds on April 24, 2019, two months before One Vision asserted its cross-claim. (*See* Docs. 4, 11).

Also, the Court has not granted the relief requested in One Visions' "Prayer C." One Vision did not ask the Court to permit plaintiff to deposit the Annuity Payments into CRIS; it asked the Court to direct the Clerk of Court to pay the funds deposited into CRIS to One Vision. (Doc. 11, at 4). As of the time of this Order, the Court has not directed the Clerk of Court to distribute any of the funds to One Vision. Thus, the stated factual premise for Charles' motion to reconsider had no bearing on the Court granting plaintiff's motion to deposit funds.

Charles' confusion about how the Court came to allow plaintiff to deposit the Annuity Payments, however, is understandable because it appears he was not promptly served a copy of plaintiff's motion to deposit funds, and thus may have been deprived of an opportunity to resist plaintiff's motion. (Doc. 4). The fact that Charles was not timely served a copy of plaintiff's motion, and thus did not file a resistance to said motion, could constitute the type of mistake, inadvertence, surprise, or excusable neglect that would justify relief under Rule 60(b)(1). To rectify the lack of service of plaintiff's motion, the Court ordered the Clerk of Court to serve each of the Marr defendants with all the pleadings in this case and provided the Marr defendants fourteen days to file a resistance to plaintiff's motion to deposit funds. (Doc. 25). None of the Marr defendants filed a resistance to plaintiff's motion as permitted by the Court's Order. In the absence of any new argument against allowing plaintiff to deposit the Annuity Payments into CRIS, the Court cannot conclude that its Order permitting plaintiff to deposit the Annuity Payments was the result of mistake, inadvertence, surprise, or excusable neglect. Thus, the Court finds that the initial lack of service of plaintiff's motion to deposit funds does not justify relief under Rule 54(b) or 60(b)(1).

## 2.     *Rule 60(b)(6)*

Charles' three remaining arguments in favor of reconsideration do not fall within any of the specific grounds for relief set forth in Rule 60(b)(1)-(5).  Thus, the Court will analyze Charles' remaining arguments under Rule 60(b)(6) which permits relief from an order for "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(6).  Charles' first argument is that the Court made an incorrect factual finding about the circumstances leading to the settlement agreement which, in turn, resulted in the purchase of the Annuity.  (Doc. 17, at 3).  Plaintiff stated in its complaint that Katherine, through her trustee, entered into a settlement agreement with "personal injury defendants and their insurers" which resulted in the purchase of the Annuity for Katherine's benefit.  (Doc. 1, at 2-3).  The Marr defendants admitted "that there is a settlement agreement" but did not address whose personal injuries lead to the existence of the agreement.  (Doc. 5, at 9).  The Court construed the language in the complaint, which was not denied in the Marr defendants' answer, to mean that settlement was the result of injuries to Katherine.  (Doc. 12, at 2).  Charles now asserts that the settlement agreement was the result of an accident causing the death of Katherine and the Marr defendants' parents.  (Doc. 17, at 3).

The issues before the Court in ruling on plaintiff's motion to deposit funds were 1) whether there were or could be competing claims to the Annuity Payments, and 2) whether there was minimal diversity between the potential claimants.  (Doc. 12, at 4-8).  Whether the settlement agreement leading to the purchase of the Annuity was the result of personal injuries to Katherine or her parents had no bearing on the issues before the Court.  Thus, any minor factual error by the Court does not justify reconsideration of the Court's Order.

Charles' second contention is that One Vision is not the same as Opportunity Village.  (Doc. 17, at 3).  In determining whether to allow plaintiff to deposit the funds at issue, the Court is not charged with sorting out the merits of the competing claims to

the funds. Rather, the Court must only determine whether plaintiff has "a real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *See Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012). Plaintiff alleged, and One Vision admitted, that One Vision is an Iowa nonprofit corporation formerly known as Opportunity Village. (Docs. 1, at 1; 11, at 1). One Vision has also asserted a cross-claim against the Marr defendants alleging that it is the beneficiary designated in the application for the Annuity and that Michael lacked authority to change the beneficiary of the Annuity. (Doc. 11, at 3). Thus, the Court found that plaintiff had a real and reasonable fear of conflicting claims to the Annuity Payments by the Marr defendants and One Vision. Even if Charles were correct that One Vision is not actually the same as Opportunity Village, he would still not be entitled to relief under Rule 60(b)(6) because the record establishes that plaintiff had a real and reasonable fear that it may be exposed to competing claims to the Annuity Payments.[4]

Charles' third basis for his motion to reconsider under Rule 60(b)(6) is his belief that the Court treated the facts alleged in the Marr defendants' answer as being "less factual" because they came from pro se parties. (Doc. 17, at 3). In its Order permitting plaintiff to deposit the remaining Annuity Payments, the Court noted "[a] pro se party's

---

[4] The Court notes, based on the publicly available filings with the Iowa Secretary of State, that Opportunity Village is a fictitious name adopted in 1994 by Handicap Village, an Iowa nonprofit corporation. Charles is also aware that Opportunity Village was formerly known as Handicap Village. (Doc. 17, at 3). In 2017, Handicap Village amended its Articles of Incorporation to formally change its corporate name to One Vision. The fact that a corporation changes its name does not affect the corporation's rights and liabilities. *See Bankers Life & Cas. Co. v. Kirtley*, 338 F.2d 1006, 1013 (8th Cir. 1964) ("Neither a change in name of a corporation nor a change in its stock or stockholders ordinarily will affect its rights and obligations."); 6 Fletcher, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 2456 (2019) ("A mere change in the name of a corporation generally does not destroy the identity of the corporation, nor in any way affect its rights and liabilities." (footnotes omitted)). If the Court were required to determine whether One Vision is the same as Opportunity Village, the Court would find, based on judicially noticeable facts, that One Vision is the same corporation as Opportunity Village.

pleadings are to be liberally construed and are held 'to less stringent standards than formal pleadings drafted by lawyers.'" (Doc. 12, at 5 (quoting *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014))). The Court liberally construed the facts asserted in the Marr defendants' answer in the Marr defendants' favor, and the Court interpreted those facts as best it could to construct a defense to plaintiff's motion to deposit funds. (Doc. 12, at 6-7). Charles' assertion that the Court discounted the Marr defendants' factual assertions is incorrect. The Court construed the Marr defendants' factual assertions as broadly as it could, and still found that plaintiff was entitled to deposit the Annuity Payments. Because the Court did not discount the facts alleged in the Marr defendants' answer, Charles is not entitled to reconsideration of the Court's Order. Charles' motion to reconsider is therefore **denied**.

## IV.    *MOTION FOR INTERPLEADER RELIEF*

### A.    *Applicable Law*

"Interpleader is a procedural device whereby a party holding money or property concededly belonging to another may join in a single suit two or more parties asserting mutually exclusive claims to the fund. The stakeholder is thereby freed from the threat of multiple liability and/or the vexation of multiple lawsuits." *Hearing v. Minn. Life Ins. Co.*, 33 F. Supp. 3d 1035, 1039 (N.D. Iowa 2014) (quoting *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir.1976)). Thus, the requirements for interpleader are that the movant possess money or property belonging to another, and there are mutually exclusive claims to the money or property by two or more parties. *Id*. "[The] interpleading stakeholder need not sort out the merits of conflicting claims as a prerequisite to interpleader," but the stakeholder "must have a good faith belief that there are or may be colorable competing claims to the stake." *Michelman*, 685 F.3d at 894. A stakeholder has a good faith belief that there are competing claims to the funds when it has "a real and reasonable fear of exposure to double liability or the vexation of

conflicting claims." *Id.* "Interpleader is an equitable remedy." *Home Indem. Co. v. Moore*, 499 F.2d 1202, 1205 (8th Cir. 1974). The purpose of interpleader is to protect a stakeholder from the problems posed by multiple claims to the funds, such as double liability and the unnecessary cost of litigation, when the stakeholder already concedes the money belongs to another. *Michelman*, 685 F.3d at 894.

A party may bring an interpleader action in a federal district either as a "statutory interpleader" under Title 28, United States Code, Section 1335, or as a "rule interpleader" under Federal Rule of Civil Procedure 22. "The same principles apply to both statutory and Rule 22 interpleader, and the only differences between the two involve procedural requirements such as jurisdiction, venue, service of process, and amount in controversy." *Acuity v. Rex, LLC*, 296 F. Supp. 3d 1105, 1107 (E.D. Mo. 2017) (citations omitted), *aff'd*, 929 F.3d 995 (8th Cir. 2019).

Interpleader is a two-stage process. *Viking Ins. Co. of Wis. v. Kemp*, No. 3:12-cv-00216 KGB, 2013 WL 6780571, at *3 (E.D. Ark. Dec. 19, 2013) (citing 7 Charles Alan Wright et. al, FEDERAL PRACTICE AND PROCEDURE § 1714 (3d ed. 2013)). At the first stage, the court determines if interpleader relief is appropriate, i.e. whether the court has jurisdiction, whether there are or could be competing claims to the funds, and the sufficiency of any required deposit or bond. *Id.* At the second stage, the court determines the merits of the remaining parties' claims to the implead funds. *Id.* "There is no set procedure for conducting the first stage of interpleader. The issues typically are formulated by motion. In some cases, courts have determined whether interpleader should lie as part of a summary-judgment motion." 7 Charles Alan Wright et. al, FEDERAL PRACTICE AND PROCEDURE § 1714 (3d ed. 2019). Given that defendants have not resisted plaintiff's motion or offered any basis to dispute the exhibits attached to plaintiff's motion (Doc. 24-3), the Court will consider plaintiff's exhibits, the parties' pleadings, and judicially noticeable facts in ruling on plaintiff's motion.

### B.    Analysis

#### 1.    Jurisdiction

The Court has jurisdiction over a statutory interpleader when "(1) there are adverse claims to money or property worth $500 or more and when (2) at least two of the adverse claimants are of diverse citizenship." *Acuity*, 296 F. Supp. 3d at 1107 (citing 28 U.S.C. § 1335). Section 1335 also requires that the stakeholder plaintiff deposit the funds at issue, or otherwise post security to ensure the stakeholder plaintiff's compliance with the court's order or judgment. 28 U.S.C. § 1335(a)(1). The requirement that there only be diversity between two or more of the adverse claimants is known as "minimal diversity." *Buckeye State Mut. Ins. Co. v. Moens*, 944 F. Supp. 2d 678, 688 (N.D. Iowa 2013); *see also Noatex Corp. v. King Constr. of Hous., LLC*, 864 F. Supp. 2d 478, 482 (N.D. Miss. 2012) ("The interpleader statute, 28 U.S.C. § 1335, confers jurisdiction over cases with only 'minimal diversity,' that is, diversity between two or more claimants rather than complete diversity between the stakeholder plaintiff and the defendant claimants." (citations omitted)).

#### a.    Competing Claims

This Court previously held that it had jurisdiction over plaintiff's interpleader claim. (Doc. 12, at 5-8). Having reviewed the more developed record on plaintiff's current motion, the Court finds no reason to reverse it prior holding. There are actual adverse claims to the Annuity Payments, and those payments exceed $500. Plaintiff has already deposited nearly $8,000 in Annuity Payments into CRIS, and plaintiff continues to deposit Annuity Payments of $611.42 monthly. Thus, the funds at issue exceed the $500 statutory minimum. There are also competing claims to that funds. One Vision pleaded a cross-claim against the Marr defendants asserting that it is entitled to the Annuity Payments because: 1) One Vision is the same nonprofit corporation formerly known as Opportunity Village; 2) Opportunity Village is the named beneficiary of the

Annuity; and 3) Michael lacked the authority to change the beneficiary of the Annuity. (Doc. 11, at 3). Charles has likewise requested that the Court "recognize . . . Michael's authority to change the beneficiaries of the Annuity" to make Michael the primary beneficiary and Elizabeth the contingent beneficiary. (Doc. 17, at 4). Thus, there are competing claims to the Annuity Payments. Given the existence of actual competing claims, the Court need not address whether plaintiff has a good faith belief about the existence of competing claims.

### b. *Minimal Diversity*

This case also satisfies the second requirement for rule interpleader because there is minimal diversity between at least two claimants to the funds at issue. Again, minimal diversity only requires that two or more claimants be citizens of different states. *Acuity*, 296 F. Supp. 3d at 1107 (citing 28 U.S.C. § 1335). Plaintiff alleges that Michael and Charles are citizens of California, Elizabeth is a citizen of Utah, and One Vision is a citizen of Iowa. (Doc. 1, at 1-2). One Vision admits that it is a citizen of Iowa. (Doc. 11, at 1). The Marr defendants have not denied plaintiff's citizenship allegations (Doc. 5), and thus the Marr defendants admit plaintiff's citizenship allegations. *See* FED. R. CIV. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied"). The claimants to the Annuity Payments, thus, are minimally diverse.

### c. *Deposit*

In considering plaintiff's motion to deposit funds, the Court did not consider the third requirement for its jurisdiction over a rule interpleader action which requires that the stakeholder deposit the funds at issue or otherwise provide security for the subject of the interpleader. 28 U.S.C. § 1335(a)(1). After the Court granted plaintiff's motion to deposit funds, plaintiff deposited the eleven monthly Annuity Payments it withheld from October 1, 2018, through August 1, 2018. Plaintiff has continued to deposit the monthly

Annuity Payments of $611.42 per the terms of the Annuity. Thus, plaintiff has met the deposit requirement for rule interpleader, and the Court has jurisdiction over plaintiff's interpleader action.

### 2.    *Interpleader*

In addition to properly invoking the Court's jurisdiction, plaintiff has likewise properly invoked the procedural device of interpleader. Interpleader is available when the plaintiff holds funds concededly belonging to another and there are two or more mutually exclusive claims to the funds. *See Hearing*, 33 F. Supp. 3d at 1039. Plaintiff concedes it is obliged to make the Annuity Payments (Doc. 1, at 4) because the Annuity Payments belong to the proper beneficiary of the Annuity. As the Court found above, One Vision and Michael have competing claims to the funds. The claims to the funds are mutually exclusive. If Michael had authority to change the beneficiary of the Annuity as the trustee of his parents' trust and/or as the executor of his parents' estates, then Michael is the sole beneficiary of the Annuity with Elizabeth as the contingent beneficiary. (*See* Doc. 1-3). On the other hand, if Michael lacked the authority to change the beneficiary, then One Vision, formerly known as Opportunity Village, is the sole beneficiary of the Annuity. (Doc. 1-2, at 9). Because either Michael or One Vision is entitled to the entirety of the Annuity Payments, their claims are mutually exclusive. Thus, plaintiff has properly invoked interpleader.

### 3.    *Relief*

Having found that plaintiff appropriately invoked interpleader, the Court must determine the proper relief to provide plaintiff at the end of the first stage of this case. Plaintiff seeks to be fully discharged from any further liability "arising out of or relating to the Annuity Payments" and to enjoin defendants from instituting or prosecuting any other claims against plaintiff "arising out of or relating to the Annuity Payments." (Doc. 24-1, at 9). Plaintiff requests that the Court dismiss it from this action with prejudice

and dismiss with prejudice "[a]ny and all claims, demands, debts, or causes of action arising out of or relating to the Annuity Payments that could have been asserted herein." (*Id.*, at 10). Plaintiff also seeks to recover its attorneys' fees and costs associated with this action out the Annuity Payments deposited in CRIS. (*Id.*, at 9).

### a.     *Discharge from Liability and Injunction*

In an interpleader action, the Court has the authority to enjoin the claimants from instituting and prosecuting any claim affecting the funds at issue in the interpleader action. 28 U.S.C. § 2361. The Court is also empowered to discharge the plaintiff from further liability regarding the subject of the interpleader and make any other orders to enforce its judgment. *Id.* The Court also has the authority to dismiss the stakeholder plaintiff at the end of the first stage of the interpleader action. *See Hearing*, 33 F. Supp. 3d at 1052 (granting motion to deposit funds and dismissing the stakeholder plaintiff with prejudice upon deposit of the funds at issue); *see also* 7 Charles Alan Wright et. al, FEDERAL PRACTICE AND PROCEDURE § 1714 (3d ed. 2019) ("When the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead. . ..") (footnotes omitted).

In light of the Court's holding that plaintiff is entitled to interpleader relief, the Court finds that plaintiff is entitled to be discharged from liability and to an injunction against the defendants. Plaintiff is not entitled, however, to the scope of the discharge and injunction requested. Plaintiff seeks to be discharged from liability, and to enjoin defendants against instituting or prosecuting any suit against plaintiff "arising out of or relating to the Annuity Payments." (Doc. 24-1, at 9-10). The Court cannot completely discharge plaintiff from liability or enjoin defendants from prosecuting claims relating to the Annuity Payments. Plaintiff states in its complaint that it is required to continue

making the Annuity Payments until June 1, 2022. (Doc. 1, at 4). If the Court were to grant the discharge and injunctions requested, defendants would be left without recourse if plaintiff failed to make Annuity Payments into the CRIS system or to the prevailing party following the second stage of this action. Thus, plaintiff is hereby discharged from further liability, and defendants are enjoined from instituting or prosecuting any proceeding, arising out of or relating to the Annuity Payments except for any claim that plaintiff failed to make the Annuity Payments into CRIS or as otherwise directed by this Court.

### b.    *Dismissal*

The Court finds that it is appropriate to dismiss plaintiff with prejudice from this action. As the Court noted above, dismissal is appropriate at the end of the first stage of an interpleader action when the plaintiff has deposited the funds at issue with the Court. Plaintiff is hereby **dismissed with prejudice**. Plaintiff is ordered to continue to make the monthly Annuity Payments into CRIS until otherwise directed by the Court.

Plaintiff also requests that the Court dismiss with prejudice all claims that defendants could have brought in this case related to the Annuity Payments. Plaintiff provides no authority to support its request that the Court dismiss unasserted claims with prejudice. Under Article III of the United States Constitution, the Court can only adjudicate actual cases and controversies before it. *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008). It is not apparent from plaintiff's motion that defendants' unasserted claims present a case or controversy. Also, the Court finds that the purposes of interpleader, protection from multiple liability or unnecessary cost of litigation, are satisfied by the other relief granted in this Order. Thus, plaintiff's request that the Court dismiss with prejudice defendants' unasserted claims is **denied**.

### c.    Attorneys' Fees

Plaintiff seeks to recover its attorneys' fees and costs associated with this interpleader action from the implead funds. (Doc. 24-1, at 9-10). The Eighth Circuit has long held that in an interpleader action "a completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, [but] the amount allowed for such fees should be modest." *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940). Modest attorney fee awards are generally appropriate because interpleader actions generally "do[ ] not usually involve any great amount of skill, labor or responsibility." *Id.* In an interpleader action, "[r]ecoverable expenses are properly limited to the attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit." *Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014). This Court has noted that "[s]ome federal courts have questioned whether attorney fees are appropriate when a stakeholder files an interpleader action to obtain the court's assistance concerning a decision arising in the normal course of business, or otherwise realizes a benefit from the interpleader remedy." *Hearing*, 33 F. Supp. 3d at 1043; *see also Life Ins. Co. of N. Am. v. Eufracio*, 25 F. Supp. 3d 1179, 1182-85 (N.D. Iowa 2014). "[B]ecause the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). This concern is particularly relevant when the costs of the interpleader action are part of the stakeholder's ordinary cost of doing business. *Eufracio*, 25 F. Supp. 3d at 1184. Good faith on behalf of the stakeholder is required to recover attorneys' fees. *Aetna Life Ins. Co. v. Bowen*, 308 F. Supp. 1394, 1397 (W.D. Mo. 1969); *see also W.-S. Life Assur. Co. v. Lee*, No. 4:13-CV-2499 CEJ, 2015 WL 2124753, at *2 (E.D. Mo.

May 6, 2015) (listing, among the considerations in awarding attorneys' fees in an interpleader action, "whether the stakeholder acted in good faith and with diligence").

In determining the amount of fees that a stakeholder plaintiff can recover, courts begin with the lodestar method, "which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). To determine the number of hours reasonably expended in an interpleader case, "courts consider, among other factors, the complexity of the case, 'whether the stakeholder performed any unique services for the claimant or the court,' whether either the stakeholder or claimants 'improperly protracted the proceedings,' and whether any of the services rendered benefitted the stakeholder." *Protective Life Ins. Co. v. Kridner*, No. CIV. 12-582 JRT/JJG, 2013 WL 1249205, at *4 (D. Minn. Mar. 27, 2013) (quoting *Smith Barney, Harris Upham & Co. v. Connolly,* 887 F. Supp. 337, 346 (D. Mass. 1994)). The burden is on the party seeking the attorneys' fee award to provide support for the number of hours worked and the reasonableness of the hourly rate. *Hearing*, 33 F. Supp. 3d at 1043-44. "[A]ny '[u]ncertainties in a fee application due to nonspecific entries are resolved against the applicant.'" *Kridner*, 2013 WL 1249205, at *5 (quoting *In re OEM Indus. Corp.,* 135 B.R. 247, 251 (Bankr. W.D. Pa. 1991)); *see also Lee*, 2015 WL 2124753, at *3.

The Court finds that an award of attorneys' fees is appropriate here. The Eighth Circuit has generally held that a stakeholder is entitled to recover modest attorneys' fees. *Hunter*, 111 F.2d at 557. The Marr defendants allege that plaintiff did not act in good faith, and thus is not entitled to attorneys' fees. Specifically, the Marr defendants claim plaintiff acted in bad faith because it only requested information related to the allegedly nonexistent Katherine M. Marr Trust, and that plaintiff only contacted Mr. Arispe, not

the Marr defendants, about Michael's authority to change the beneficiary of the Annuity. (Doc. 5, at 10-11).

The Court finds that plaintiff acted in good faith in attempting to resolve the discrepancy surrounding Michael's capacity to change the Annuity's beneficiary designation. The original beneficiary designation listed the payee of the Annuity as "Michael W. Marr, Trustee of the Katherine M[.] Marr Trust." (Doc. 1-2 at 9). Michael signed the change of beneficiary form without any reference to any trust and did not otherwise indicate he was acting on Katherine's behalf. (Doc. 1-3). Plaintiff was in contact over a period of approximately six months with Michael, Elizabeth, and Mr. Arispe about Michael's authority to change the beneficiary of the Annuity. (Doc. 24-3, at 16-31). Mr. Arispe explained that the Katherine M. Marr Trust was a "designation for business purposes." (Doc. 24-3, at 23). Plaintiff reviewed the documentation provided by Mr. Arispe relating to the Marr defendants and Katherine's parents' trust and determined that it was not sufficient to permit Michael to change the beneficiary of the Annuity. (Doc. 24-3, at 29-31). Whether Michael in fact had authority to change the beneficiary is not the issue before the Court at this time. The Court finds, however, that the discrepancy between the face of the original beneficiary designation and the explanation Michael and Mr. Arispe provided warranted plaintiff's good faith belief that Michael lacked the authority to change the beneficiary of the Annuity. Because plaintiff acted in good faith, it is entitled to an award of attorneys' fees in some amount.

The Court, having reviewed plaintiff's itemized statement of attorneys' fees and costs (Doc. 24-2, at 3-5), finds that plaintiff is entitled to reimbursement in the amount of $3,415, as set out in the table below:

19

| Services Rendered | Hours Claimed | Hours Allowed | Hourly Rate | Total |
|---|---|---|---|---|
| Complaint/Motion to Deposit Funds | 8.5 | 5.8 | $225 | $1,305 |
| Service of Process | 4.5 | 1.6 | $225 | $360 |
| Discharge and Dismissal | 8.1 | 6.0 | $225 | $1,350 |
| Filing Fee | | | | $400 |
| **Total** | | | | **$3,415** |

The Court will not discuss each time entry individually. The Court arrived at the award of $3,415 as follows:

As to plaintiff's costs, the Court finds that the $400 filing fee for this action is an appropriate and recoverable expense.

As to plaintiff's claimed attorneys' fees, the Court notes that plaintiff requests $5,727.96 in attorneys' fees. (Doc. 24-1. at 9). The impleaded funds consist of monthly Annuity Payments of $611.42 which plaintiff began to withhold on October 1, 2018, and which terminate following the final payment on June 1, 2022. Thus, the total amount of the Annuity Payments is $27,513.19. Plaintiff's claim for expenses constitutes a request for over twenty-two percent of the funds at issue here. Given that plaintiff is an insurance company whose ordinary course of business involves determining the efficacy of change of beneficiary forms, the Court finds that the expenses requested are part of plaintiff's ordinary cost of doing business and the amount of fees plaintiff requests would unreasonably deplete the funds.

Turning specifically to plaintiff's attorneys' fees associated with preparation of the complaint and motion to deposit funds, the Court finds that none of the March 25, 2019 entry is recoverable. The Court finds that plaintiff's vague entries throughout its application for "strategizing" are not sufficiently specific and such ambiguities must be resolved against the applicant. *Kridner*, 2013 WL 1249205, at *5. Also, plaintiff filed its interpleader action under federal law, so research into Iowa interpleader law is not

recoverable as part of drafting the complaint. Similarly, research on "trustee limitations" is not recoverable as it goes to the underlying merits of Michael's claim to the funds, not the preparation of the federal interpleader complaint.

Plaintiff does not seek to recover attorneys' fees for time billed by its local counsel (Doc. 24-2, at 1) but plaintiff seeks to recover attorney's fees incurred for its primary counsel's communications with local counsel. (*Id.*, at 3-4). The Court finds it is not appropriate for plaintiff to recover fees for "any apparent duplicative work and time spent by the two law firms in coordinating and discussing the matter with each other." *Lee*, 2015 WL 2124753, at *4. After removing the improper entries, the Court finds that 5.8 hours was sufficient for plaintiff's counsel to prepare the complaint and motion to deposit funds.

In analyzing plaintiff's claimed attorneys' fees associated with service, it is important to note that plaintiff never personally served any of the defendants. One Vision accepted service (Doc. 6) and the Marr defendants answered without being personally served or accepting service. Several billing entries about service are unclear as to what actions plaintiff's counsel took. These vague "attention to" or "strategize" entries are insufficiently detailed to be recoverable. Similarly, the Court cannot award fees for plaintiff's counsel's conversation with "M. Dodd" without any explanation of who M. Dodd is, or how the conversation related to this dispute. The Court finds that 1.6 hours was sufficient for plaintiff to obtain service or acceptance of service of this action on defendants.

Finally, the Court notes two issues with plaintiff's claimed attorneys' fees associated with obtaining its discharge from liability and dismissal. First, plaintiff's counsel included two entries from August 29 and 30, 2019, seeking expenses incurred as part of plaintiff's effort to recover its attorneys' fees. (Doc. 24-2, at 4). One factor in determining if attorneys' fees are proper in an interpleader action is whether the fees

benefitted the stakeholder of the interpleaded funds. *Kridner*, 2013 WL 1249205, at *4. An award of attorneys' fees in an interpleader action is disfavored when the party invoking interpleader incurs the fees solely for its own benefit. *Eufracio*, 25 F. Supp. 3d at 1182, 1184. Plaintiff's efforts to recover its attorneys' fees solely benefit plaintiff at the expense of the claimants. Thus, the fees plaintiff incurred in obtaining its attorneys' fees are not recoverable. Plaintiff's itemization of attorneys' fees incurred in obtaining its discharge and dismissal also contains unrecoverable entries involving communication with local counsel and vague "strategize" entries. The Court finds that 6.0 hours of attorney time was sufficient for plaintiff to obtain its discharge from liability and dismissal from this case.

Having determined that plaintiff can recover for a total of 13.4 hours of its attorneys' time, the Court must determine the reasonable hourly rate under the lodestar method. This Court has described the method of determining the reasonable hourly rate as follows:

> The reasonable hourly rate is generally tied closely to the local market rate. However, in specialized areas of the law, the national market may provide the reasonable hourly rate. "Reasonable fees" are to be calculated according to the similar services by lawyers of reasonably comparable skill, experience and reputation in the relevant community.

*Ne. Iowa Citizens for Clean Water v. Agriprocessors, Inc.*, 489 F. Supp. 2d 881, 901 (N.D. Iowa 2007). Ordinarily, the reasonable hourly rate is the prevailing market rate for the venue where the case has been litigated. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (citation omitted). The party seeking an award of attorneys' fees bears the burden of proving the reasonableness of the rate. *Hensley*, 461 U.S. at 433. "The district court is given great latitude to determine a reasonable hourly rate because it 'is intimately familiar with its local bar.'" *Banks v. Slay*, 875 F.3d 876, 882 (8th Cir. 2017) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)).

Plaintiff's itemized statement of attorneys' fees identifies 6.0 hours of attorney time billed at $218.7 per hour and the remaining 15.1 hours billed at either $297 or $287.10 per hour.[5] (Doc. 24-2, at 3-4). Amy Boyea states in her affidavit that these rates "represent the prevailing market rate in and around Arlington, Texas, for similar services by lawyers of reasonably comparable skills, experiences, and reputation." (*Id.*, at 1).

The Court finds that this case does not involve a specialized area of law or any extraordinary skill. *See Hunter*, 111 F.2d at 557 (noting that interpleader actions "do[ ] not usually involve any great amount of skill, labor or responsibility"). Thus, the prevailing market rate for similar work is an appropriate measure for determining fees under the lodestar method. Ms. Boyea's affidavit establishes the market rate for similar legal work in Arlington, Texas, but this case has been litigated in Cedar Rapids, Iowa. Plaintiff has not met its burden to show that the rates claimed are reasonable for similar work in this venue. The Court finds, based on its knowledge of the local bar, that a rate of $225 per hour is reasonable for the legal work in this case. *See Banks*, 875 F.3d at 882; *see also Prudential Ins. Co. of Am. v. Williams*, No. 19-CV-2015-KEM (N.D. Iowa) (Doc.25) (approving a reasonable hourly rate of $230 in an interpleader action involving $69,528 in death benefits).

Under the lodestar method, plaintiff is entitled to recover reasonable attorneys' fees for 13.4 hours of legal work at a rate of $225 per hour, for total attorneys' fees of $3,015. Plaintiff is also entitled to recover the $400 filing fee for a total expense award of $3,415.

---

[5] These hourly rates reflect the 10% "professional courtesy discount" that plaintiff receives from its counsel. (Doc. 24-2, at 4).

The parties may object to the amount of the Court's award of attorneys' fees and costs within fourteen days of the date of this Order.[6] If the Court receives no timely objection, the Clerk of Court is directed to make payment to plaintiff in the amount of $3,415 from the funds currently held in CRIS. The remaining balance will remain on deposit in CRIS pending further order of the Court.

## V.    CONCLUSION

For the reasons stated above, Charles' motion to reconsider (Doc. 17) is **denied**. Plaintiff's Motion for Interpleader Relief (Doc. 24) is **granted in part** and **denied in part** as follows:

1.    Plaintiff's request for discharge from liability is **granted in part**. Plaintiff is discharged from all further liability arising out of or relating to the Annuity Payments except that plaintiff is not discharged from liability for making the Annuity Payments into CRIS or as otherwise directed by the Court;

2.    Plaintiff's request for a permanent injunction is **granted in part**. One Vision, Michael, Charles, and Elizabeth are permanently enjoined from instituting or prosecuting any proceeding in any state or federal court affecting the Annuity Payments, except for alleging that plaintiff failed to make the Annuity Payments into CRIS or as otherwise directed by the Court;

3.    Plaintiff's request to be dismissed with prejudice from this action is **granted**. Plaintiff's request that the Court dismiss claims that defendants could have but did not assert against plaintiff in this action is **denied**.

4.    Plaintiff's request for $5,727.96 in attorneys' fees and $400 in costs is **granted in part**. Plaintiff's request is **granted** as to $3,015 in attorneys' fees and $400 in costs.

---

[6] The parties may object to the amount of the award only, not the propriety of awarding fees out of the interpleaded funds.

The Clerk of Court is **directed** to make payment to plaintiff in the amount of $3,415 out of the funds held in CRIS if no objection is received within fourteen days of the date of this Order.

**IT IS SO ORDERED** this 19th day of November, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa